# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| WALTER A. CHODOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 3463 |
| v. ) | |
| ) | Wayne R. Andersen, |
| CITY OF CHICAGO, an Illinois ) | District Judge |
| municipal corporation, body politic ) | |
| and unit of local government, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the motion of defendant City of Chicago ("the City") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

In the Spring of 2006, plaintiff Walter A. Chodor ("Chodor") was employed as a detective in the City's Police Department. At or about this time Chodor came to believe, albeit mistakenly, that he was infected with the Human Immunodeficiency Virus ("HIV"). Acting on this mistaken belief, Chodor alleges that he ingested a drug called Marinol, which was provided to him by a long-time friend whom Chodor trusted. Additionally, Chodor claims that he was told by his friend that Marinol was a dietary supplement taken by HIV-positive individuals in order to stimulate the appetite. Though unbeknownst to Chodor at the time, Marinol is actually a controlled prescription medicine that contains THC, a substance also found in marijuana.

On May 24, 2006, at the request of his supervisors, Chodor reported for a random drug

test and provided a urine sample. According to Chodor's complaint, it was only after the drug test that he learned that Marinol was not a dietary supplement, but a prescription drug containing THC. On or about June 1, 2006, Chodor was ordered by his superiors to report to the Internal Affairs Division ("IAD") of the Chicago Police Department ("CPD") to discuss the results of his May 24 drug test. At the IAD Police Sergeant Joseph Stehlik ("Stehlik") met with Chodor for questioning.

According to Chodor, Stehlik coerced and compelled Chodor to give a statement regarding his use of Marinol. Believing he was under arrest and that he would lose his job if he did not comply with Stehlik's interrogation, Chodor says that he explained that he took Marinol because he thought that he was HIV-positive, not knowing it was a prescription drug containing THC until after he ingested the pills. Chodor claims that Stehlik and the CPD were unaccommodating to Chodor's confusion about his own HIV status.

Seven months later, on or about January 8, 2007, the CPD charged Chodor with various violations of the Department of Police Rules and scheduled a hearing before the Chicago Police Board to fire Chodor. Chodor claims that his superiors threatened to release the details of his IAD investigation unless he resigned. With several thousand dollars of accrued leave time at stake, Chodor elected to resign from his position. He did so on February 12, 2007. In his complaint, Chodor characterizes his resignation as a "constructive termination" by the CPD. Furthermore, in the months thereafter, Chodor alleges that the CPD nonetheless caused or permitted publication of details from his IAD investigation. As a result, Chodor claims that he was repeatedly accused by unnamed persons of being fired "for smoking marijuana."

Chodor originally filed his seven-count complaint in the Circuit Court of Cook County

on May 16, 2008. Chodor's claims are as follows: Count I alleges violation of Chodor's civil rights pursuant to 42 U.S.C. §1983, Count II alleges wrongful termination and a failure to accommodate under the Americans with Disabilities Act, Counts III through VI allege state law defamation claims and Count VII alleges a state law claim of intentional infliction of emotional distress by publication of slander. The City removed Chodor's action to this court on June 17, 2008.

## DISCUSSION

When ruling on a 12(b)(6) motion to dismiss, this court considers all well-pleaded factual allegations in the complaint as true and will draw all reasonable inferences therefrom in the plaintiff's favor. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 512 (7th Cir. 2007). Dismissal is appropriate when the complaint fails to show that relief could be "granted under any set of facts that could be proved consistent with the allegations." *Holman v. Indiana,* 211 F.3d 399, 402 (7th Cir. 2000). A plaintiff's entitlement to relief depends on the pleading of factual allegations sufficient "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

### I.   Count I: Section 1983 Claim

In Count I, Chodor alleges that the City violated his civil rights under 42 U.S.C. § 1983. However, Chodor fails to meet the *Monell* standard in his claim against the City, a municipal defendant, for this alleged violation of his civil rights. In *Monell v. Dept. of Social Servs.,* the Supreme Court held that "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). Rather, the doctrine of respondeat superior gives way to a different theory of liability, one that is rooted in a

"government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*

To succeed in his claim, a plaintiff must establish the government's "policy or custom" by showing either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 735 (7th Cir. 1994). In cases when employee conduct is alleged to have caused the plaintiff's injury (not the municipality's express policy, for example), the Supreme Court has said that the "danger that a municipality will be liable without fault is high" when the plaintiff's Section 1983 claim for municipal liability arises from a single incident. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). In these situations it is more likely that, if anything, "the plaintiff will simply have shown that the *employee* acted culpably," not the municipality. *Id.* (Emphasis in original).

Chodor failed to allege that Stehlik's conduct on or about June 1, 2006 at the IAD represented a policy, custom, or practice of the City. Nowhere in his complaint did Chodor provide any factual basis that satisfies the *Monell* standard for municipal liability. Rather, Chodor merely alleges that he was coerced and compelled by Stehlik to answer questions about the results of his recent drug test. The complaint fails to address any nexus between Stehlik's behavior, as a municipal employee acting under the color of state law, and a policy or custom of the City. Accordingly, because Chodor fails to satisfy the *Monell* standard, the City's motion to dismiss is granted with respect to Count I.

## II.     Count II: Wrongful Termination

In Count II, Chodor claims that the City violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et. seq., during his IAD interview regarding the May 24 drug test results because Stehlik and the CPD failed to accommodate his "mistaken but reasonable belief that [he] was infected with [the] human immunodeficiency virus." Any potential merit of these claims notwithstanding, Chodor did not comply with the procedural requirements of the ADA. Having first commenced this action in State court, Chodor then was required to file with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly unlawful conduct. 42 U.S.C.A. § 12117(a); *Fairchild v. Forma Scientific*, 147 F.3d 567, 574 (7th Cir. 1998) (The ADA follows the timing requirements of Section 706(e) of Title VII, 42 U.S.C. § 2000e-5(e)). Failure to exhaust this administrative remedy precludes a plaintiff from later suing on his ADA claim. *Id*. The IAD interview took place on or about June 1, 2006. Chodor submitted his resignation on February 12, 2007. On May 16, 2008, over one year later, Chodor filed his complaint in the Cook County Circuit Court. Nothing in the record reveals that Chodor ever filed a claim with the EEOC. Therefore, the portion of Count II that asserts an action under the ADA is dismissed.

In the same count, Chodor alleges that he was wrongfully discharged from the Police Department, claiming that his February 12, 2007 resignation was a constructive termination by the City. However, this action is time-barred. With the exception of cases involving injury or death, the Illinois Tort Immunity Act places a one-year statute of limitations on civil actions brought against a "local entity or any of its employees." 745 ILCS 10/8-101(a). Accrual begins

on the date of the alleged injury. *Id*. Because Chodor filed outside of the limitations period, his claim against the City is barred. Therefore, the City's motion to dismiss Count II is granted.

## III.     Counts III-VII: Defamation and Intentional Infliction of Emotional Distress

Counts III through VII allege that the City defamed Chodor and intentionally caused him severe emotional distress. Specifically, Counts III and V allege defamation per se and per quod, respectively, by wrongful termination. Counts IV and VI allege defamation per se and per quod, respectively, by publication of slander. In Count VII, Chodor claims that the City intentionally inflicted emotional distress upon him by "publication of slander" when the CPD allegedly released the details of his IAD investigation, thereby hindering Chodor's future employment opportunities and harming his reputation.

The Illinois Tort Immunity Act bars Chodor from recovery against the City on these counts. Pursuant to 745 ILCS 10/2-107, "a local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." Under this provision, municipalities are absolutely immune from defamation suits. *Horowitz v. Bd. of Educ.*, 260 F.3d 602, 617 (7th Cir. 2001). Furthermore, because Chodor's allegations of intentional infliction of emotional distress are rooted in a claim for slander, from which the City is immune, Count VII must also fail. Additionally, notwithstanding the merits of these claims, Counts III through VII are time-barred by the one-year limitations statute of the Illinois Tort Immunity Act, see Section II *supra*. Accordingly, the City's motion to dismiss is granted with respect to Counts III through VII.

## CONCLUSION

For the reasons set forth above, the City's motion [12] to dismiss Chodor's complaint is granted. This is a final and appealable order and this is case is hereby terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: December 9, 2008